IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.  Case No. 4:22cr13/MW

ETHAN JOSEPH GRZYWACZ
_____/

**GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE ARGUMENTS AND EVIDENCE REGARDING POTENTIAL PENALTIES**

COMES NOW, the United States of America, by and through the undersigned Assistant United States Attorney, and moves this Court to exclude all reference to and evidence of the penalties or collateral consequences upon conviction for the crime(s) with which the Defendant is charged, and also all reference to and argument regarding jury nullification, and in support thereof, avers:

**I.  Factual and Procedural History**

The Government anticipates that the evidence at trial will prove the following:

On December 20, 2021, Sergio Romero (ROMERO), a college student who attended Florida State University (FSU) in Tallahassee, Florida, was arrested in the Southern District of Florida for federal child exploitation and child pornography crimes. During that investigation, ROMERO gave consent to federal investigators to assume his online social media identities. On January 1, 2022, an Online Covert Employee (OCE) who is employed by the FBI began chatting using ROMERO's

1

Telegram[1] account with Telegram User "GingerPrides" who had the display name "Ethan G" (who was later identified as the Defendant, Ethan Joseph Grzywacz, hereinafter "GRZYWACZ"), who was another FSU college student.

Historical Telegram chats between ROMERO and GRZYWACZ were identified which began on September 12, 2021 (prior to law enforcement assuming ROMERO's online profiles). During those communications, the two discussed watching Child Sexual Abuse Material (CSAM). During a conversation on September 12, 2021, GRZYWACZ took a video of himself sitting naked on a couch in a large unoccupied common area. GRZYWACZ'S face is clearly visible in the video, and appears to match his driver's license photo on file in the Florida Driver and Vehicle Information Database (DAVID). ROMERO responded to the video and asked if GRZYWACZ was in the Bryan Hall (a dormitory at FSU) third floor common area, to which GRZYWACZ answered affirmatively. In further conversations via Telegram, GRZYWACZ described his interests to ROMERO as outlined by some of the following messages:

a. Message sent by GRZYWACZ on 10/6/2021:

"Your not a huga fan of toilet play but id love to use my children as a toilet and have them clean there own diapers"

b. Message sent by GRZYWACZ on 12/12/2021:

---

[1] A social media platform that, among other things, allows its users to send messages to each other.

"I mean i dont want heavy scat mainly like toilet paper lick up after, threaten to shove face into it. My main one involves my fav fantasy rn which is to serve my own son. I'm dad he is daddy, forced me to do whstever he wants serve him every way. Urinal, sex toy, dog, toilet even, like i wouldnt ever have him potty trained snd if he wanted to fuck my face into a dirty diaper i wouldnt mind but i rlly wanna be fucked by a kid tbh"

GRZYWACZ also explained his fear in searching for videos and his interests, including more details about his desires:

  a. Message sent by GRZYWACZ on 12/12/2021:

  "Nah cp,[2] like vids i go look for ppl who are willing to share. But i get scared its a bait and the person is actually a fed or something"

  b. Messages sent by GRZYWACZ on 12/13/2021:

  "Smooth hairless small cocks undropped balls"
  "Magnificent specimens"

  c. Messages sent by GRZYWACZ on 12/13/2021 in sequence:

  "I wanna go on an rv trip"
  "Me you"
  "and a kid"
  "While one of us is driving"
  "Yhe other is well..."

Throughout the course of these Telegram chats prior to ROMERO'S arrest, ROMERO sent GRZYWACZ approximately 15 videos of CSAM, many of which depicted babies and young children being sexually abused. For example, on

---

[2] "CP" is often used as an abbreviation for "child pornography" and "child porn," also known as CSAM.

3

December 13, 2021, ROMERO sent GRZYWACZ several videos, including multiple videos depicting an adult male forcing his penis into a baby's mouth. In response to receiving and viewing to the CSAM videos, GRZYWACZ sent ROMERO multiple videos of himself masturbating.

On January 1, 2022, the OCE began messaging with GRZYWACZ using Telegram. On February 3, 2022, GRZYWACZ sent the OCE the following message:

> "I got a question, do you think a baby could take a whole dildo? Like say i was changing one and wanted to keep him loose could I shove an entire one inside him?"

On February 7, 2022, after the OCE told GRZYWACZ via Telegram that he had purchased CSAM, GRZYWACZ inquired about purchasing the child pornography videos from the OCE (who he thought was ROMERO). The following conversation took place:

| Sent by GRZYWACZ | Sent by OCE |
|---|---|
| How much for all of them? | |
| | I bet if I sell them for $5 or $10 I'll make it up in no time!! |
| 5 or 10 per shii I was about to buy them all but thats a bit too steep for me | |
| | I mean $5 or $10 for all |
| Oh shit | |
| Ill give 15 | |
| | Seriously?? |
| Mhmm, will you take venmo? | |
| Or cashapp? | |
| | Of course. Venmo is good |
| | But are you sure? |

4

|  |  |
|---|---|
|  | I know you've been trying to stop |
| And everytime i come back and get frustrated i have none |  |
| I just have fantasies |  |
|  | I know what you mean babe |
|  | I just don't want to be an enabler lol |
| Dont want me to make me a pedo? |  |
| A pervy fucked up pedo |  |
|  | Yea I don't want to be the reason [laughing face emoji] |
| Awww here i wanted to be corrupted |  |

During the Telegram communication described above, GRZYWACZ was located in Tallahassee, Florida, as FSU Splunk logs were obtained during the investigation. These logs were an analysis tool for machine-generated data and have the capability of logging activity each time students access the FSU's Internet network. The Splunk logs obtained reveal that GRZYWACZ accessed the FSU Internet network using his assigned email address, ejg21e@my.fsu.edu, on February 7, 2022. Additionally, separate FSU Internet access logs reveal that on February 7, 2022, username "ejg21e" accessed the Florida State University Internet network from various locations on the FSU campus from multiple devices.

Immediately following the Telegram conversation noted above, GRZYWACZ sent $15 via Venmo to ROMERO'S account, which was confirmed by the OCE who was operating ROMERO'S Venmo account. That same day, the

5

OCE sent GRZYWACZ a Mega.NZ[3] link which indicated that it was a 1.13 GB folder containing 31 digital files. The files sent to GRZYWACZ were considered "corrupt files," which are files that appear to the user to be files related to child pornography; however, when the recipient attempts to open the files, they are corrupt and no media, photographs, or files are actually accessible. After GRZYWACZ received the MEGA file, he responded with:

> "How do I play them?"

> "None of the videos play even after downloading the whole folder"

> "Just the black screen with the name"

> "All 31 of them, there is no play option just a black screen with the name"

> "I reclicked the link you sent me and said file type not supported and that id have to get another app to play them"

> "I got another app and now I can see how long vids are but they still wont play"

PayPal, which owns and founded Venmo, provided records in response to a federal grand jury subpoena. These records reveal the following information specific to the Venmo account associated with username Ethan-Grzywacz:

---

[3] Mega.NZ is a cloud storage and file hosting service offered by MEGA Limited, a company based in New Zealand. Users of Mega.NZ can share access to files stored on the platform with others using web links (or URLs). Many child pornography collectors and offenders use Mega.NZ to obtain, view, and share child pornography.

      Account Number: 84486965
      First Name: Ethan
      Last Name: Grzywacz
      User Name: Ethan-Grzywacz
      Mobile Phone: 19185681080
      Email: grzywaczethan73@gmail.com

The PayPal records also corroborated the information provided by the OCE, including that on February 7, 2022, at approximately 3:42 PM Pacific Standard Time (which is 6:42 PM Eastern Standard Time), Ethan-Grzywacz, sent $15 USD to Sergio Romero. Among other things, a later digital forensic examination of GRZYWACZ's cell phone revealed a confirmation email from Venmo for this transaction. The profile photo for GRZYWACZ'S Venmo account appeared to match his DAVID photo as well as the video that he recorded of himself masturbating in Bryan Hall (described above).

Thus, on February 7, 2022, GRZYWACZ was the user of the Telegram account with the username "GingerPrides" that he used to attempt to receive child pornography. GRZYWACZ was also the user of the Venmo account with the username Ethan-Grzywacz that was used to pay $15 for those files.

On March 2, 2022, a criminal complaint was filed in the NDFL (case # 4:22mj56-MAF) alleging that GRZYWACZ committed Attempted Receipt of Child Pornography and Attempted Possession of Child Pornography. Based on the criminal complaint, an arrest warrant was issued for GRZYWACZ. On March 2, 2022, a search warrant was issued by NDFL Magistrate Judge Fitzpatrick (case

7

#4:22mj55-MAF) for GRZYWACZ's residence (specifically to include electronic devices).

On March 3, 2022, agent from the FBI executed the arrest and search warrants at GRZYWACZ's Tallahassee dorm room.  GRZYWACZ was arrested, and his cell phone and digital devices were seized pursuant to the search warrant.  A digital forensic examination of GRZYWACZ's cell phone revealed that it was assigned phone number 19185681080 and was named "GingerPride."  Other evidence of user attribution was located on the device which proves that it belonged to, and was used by, GRZYWACZ.  A video believed to be CSAM depicting a male performing oral sex on a minor male was found on GRZYWACZ's phone, along with non-private chat conversations with ROMERO's using the Telegram app.

GRZYWACZ was brought to FSUPD where he was interviewed.  After being advised of his *Miranda* rights, GRZYWACZ confessed to communicating with ROMERO, who he met on the social media app "Grindr," using Telegram and to receiving child pornography using Telegram.  He also admitted to sending $15 to ROMERO via Venmo for the purpose of receiving child pornography.

On March 15, 2022, a federal Grand Jury sitting in the Northern District of Florida indicted GRYZWACZ on two counts: Receipt and Attempted Receipt of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and 2252A(b)(1), and Attempted Possession of Child Pornography, in violation of 18 U.S.C. §§

2252(a)(5)(B) and 2252A(b)(2). (Doc. 20).  Count One is punishable by five-years (as a mandatory minimum) to twenty years in prison.

## II. Evidence of potential penalties or collateral consequences is irrelevant and inadmissible

Given the expected evidence to be presented at trial, summarized above, it is not readily apparent to the Government what defense to the charges will be.[4] However, one could predict that reference to or evidence of the penalties or collateral consequences of a conviction for the crime(s) with which the Defendant is charged might be presented to the jury in this case.  Here, if convicted of Count One, the Defendant faces a mandatory minimum prison sentence of five years.  Additionally, conviction of either count of the indictment would subject the Defendant to various collateral consequences, including mandatory registration as a sex offender.

The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged. *Shannon v. United States*, 512 U.S. 573, 579 (1994).  The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict. *Id.*  Information regarding the consequences of a verdict is therefore irrelevant to the jury's task. *Id.*  It is well-settled that it is improper for a jury to consider evidence of the consequences of their verdict when determining whether the United States has met its burden of proof at trial.

---

[4] The Government is not suggesting that defendants must "tip their hands" as to their planned defenses and trial strategies, aside from those which require advance notice be given.

*See United States v. McCracken*, 488 F.2d 406, 425 (5th Cir. 1974) ("It is error to tell the jury about the consequences of a certain verdict even if they are mandatory."); *Rogers v. United States*, 422 U.S. 35, 40 (1975) ("jury [has] no sentencing function and should reach its verdict without regard to what sentence might be imposed"). "[J]urors generally are not informed of mandatory minimum or maximum sentences, nor are they instructed regarding probation, parole, or the sentencing range accompanying a lesser included offense." *Neely v. Newton*, 149 F.3d 1074, 1085 (10th Cir. 1998) (quoting *Shannon*, 512 U.S. at 586–87). In fact, jurors are routinely instructed that they are not to consider a Defendant's possible punishment when reaching a verdict. 11th Cir. Crim. Jury Instr. B10.1 (2021).

Providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion. *Shannon*, 512 U.S. at 579. "To inform the jury that the court may impose minimum or maximum sentence…tend[s] to draw the attention of the jury away from their chief function as sole judges of the facts, open the door to compromise verdicts and to confuse the issue or issues to be decided." *Pope v. United States*, 298 F.2d 507, 508 (5th Cir.1962);[5] *see also*

---

[5] The decisions of the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to close of business on that date, are binding as precedent on all federal courts within the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981)

*United States v. Del Toro*, 426 F.2d 181, 184 (5th Cir. 1970) ("[O]rdinarily there is no reason why the jury should be advised of something that has nothing to do with its duty[;] the consequence in terms of punishment is a matter for Congress on mandatory sentences or for the Court within limits fixed by the statute.") Thus, presenting information to the jury about possible sentencing is prejudicial. *United States v. Greer*, 620 F.2d 1383, 1384–85 (10th Cir. 1980). A jury is obligated to "reach its verdict without regard to what sentence might be imposed." *Id.* (quoting *Rogers*, 422 U.S. 35). Absent a statutory requirement that the jury participate in the sentencing decision, nothing is left "for jury determination beyond the guilt or innocence of an accused." *Id.* (quoting *Chapman v. United States*, 443 F.2d 917, 920 (10th Cir. 1971)).

According, courts do not violate a defendant's Fifth Amendment right to a fair trial by refusing to permit argument to the jury about the punishment to be imposed if convicted. *United States v. Chesney*, 86 F.3d 564 (6th Cir. 1996); *see also United States v. Dunn*, 398 F. App'x 869, 871 (4th Cir. 2010) ("We likewise do not believe that the district court abused its discretion by prohibiting the proposed cross-examination on the basis that it would improperly raise questions about punishment in the jury's mind").

11

### III.    Argument or suggestion of "jury nullification" is not proper

Defendants are not entitled to present evidence which is irrelevant for any purpose other than to provoke the finder of fact to disregard the law. *United States v. Lucero*, 895 F. Supp. 1421, 1426 (D. Kan. 1995). Further, "[a] criminal defendant is unentitled to a jury instruction which alerts the jury of its de facto power [of nullification] and, further, [ ] defense counsel may not argue jury nullification during closing argument." *United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998); *see also United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir. 1983). "[Jury nullification] verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power." *United States v. Joseph*, 567 Fed. App'x. 844, 849 (11th Cir. 2014) (quoting *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983)).

## IV. Conclusion

For the foregoing reasons, the Government respectfully requests this Court to exclude all reference to and evidence of the penalties and collateral consequences upon conviction for the crime(s) with which the Defendant is charged, and also prohibiting reference to or argument regarding jury nullification.

    Respectfully submitted,

    JASON R. COODY
    United States Attorney

    */s/ Justin M. Keen*
    JUSTIN M. KEEN
    Assistant United States Attorney
    Florida Bar No. 021034
    111 North Adams Street, Suite 400
    Tallahassee, FL 32301
    (850) 942-8430
    Justin.Keen@usdoj.gov

## RULE 7.1(B) CERTIFICATION

I HEREBY CERTIFY that R. Timothy Jansen, counsel for the above-named defendant, has been consulted and he does NOT object to the relief requested herein.[6]

    */s/ Justin M. Keen*
    JUSTIN M. KEEN
    Assistant United States Attorney

---

[6] Mr. Jansen admirably stated that he has "no objection to complying with the Rules of the Court and Laws of the land."

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I hereby certify, pursuant to N.D. Fla. Loc. R. 7.1(f), that this filing complies with the word limit and contains approximately <u>2,863</u> words. This response was prepared using Microsoft Word 2016 software. In making this certification, I have relied upon the word-count feature of Microsoft Word 2016.

*/s/ Justin M. Keen*
JUSTIN M. KEEN
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed via the Court's CM/ECF system on this 10th day of May, 2022, which will send notification of such filing to all counsel of record.

*/s/ Justin M. Keen*
JUSTIN M. KEEN
Assistant United States Attorney
