Mercy, please, sir, mercy! What else can a father ask of the person who holds the "power of the sword" over his son? My plea for mercy is grounded in the clear quagmire surrounding sentencing in cases like Ethan's, as well as results from emerging research about the effects of the COVID-19 pandemic on developing adolescents and young adults. Of course, I am also a father concerned for his son! I have a purview of who Ethan Grzywacz is that is wider than the few minutes, perhaps hours, of his life captured in the description of his crime and the PSR.

The June 2021 U.S. Sentencing Commission Report on non-production child pornography offenses indicates problems with an "...outdated statutory and guideline structure that perpetuate sentencing disparities..." (p. 7). The PROTECT Act of 2003 could not see or anticipate how technological advances would impact the sentencing enhancements – intended for the most severe and heinous offenders at the time – now capture and are applied to more than three-quarters of prosecuted cases. Problematically, the U.S. Sentencing Commission Report highlights disparities in sentencing that result throughout the proceedings. In 2019, 52 similarly situated offenders with the same guideline calculation received sentences ranging from 37 to 180 months. Factors contributing to disparities like these were verbalized to us through our attorney, who explained that the federal prosecutors refused to consider an alternative plea in Ethan's case because a similar case received a more conservative judge. Decisions like those pervert justice and perpetuate problems with the guidelines that have been documented for over a decade.

The problems outlined in the 2012 and 2021 Sentencing Commission Reports have led many federal judges, including Justice Ketanji Brown Jackson, to impose downward variances on sentences like Ethan's. Nearly 60% of the cases sentenced in 2019 were subjected to a downward variance from the sentencing guidelines. In my plea for mercy on behalf of my son, I beg that you extensively apply downward variances on Ethan's sentence.

Ethan was barely 18 years old when he performed the behaviors to which he pleaded guilty. Although technically an adult, emerging research from the COVID pandemic suggests that his cognitive or emotional age is lower than his birth age. Orben and colleagues (2020), in a *Lancet* article early in the pandemic, cautioned that social isolation resulting from pandemic-related "stay-at-home orders" threatened adolescents' brain development and mental health. Those expressed concerns are becoming manifest. A systematic review of 16 quantitative studies published between 2019–2021 with a combined sample of 40,076 participants indicated elevated rates of anxiety, depression, and stress due to the pandemic (Jones et al., 2021). Within the past month, a team at FSU published results indicating pronounced personality decrements among older adolescents and young adults across the COVID pandemic (Sutin et al., 2022). My point is that Ethan turned 18 on September 4, 2021, and he was charged in February 2022 – when he was 18 years and five months. The emerging scientific evidence suggests that Ethan's cognitive and emotional age may have been lower than his birth age.

Recently diagnosed mental health conditions further suggest Ethan's developmental age is not consistent with his birth age. Ethan was diagnosed with: (1) ADHD, primarily hyperactive-impulsive type, (2) panic disorder, (3) social phobia, (4) generalized anxiety disorder, (5) major depression, (6) obsessive-compulsive disorder, (7) avoidant personality disorder, (8) dependent personality disorder with self-defeating features, (9), depressive personality disorder, and (10) Asperger's disorder. I don't mind telling you that I felt like a total failure as a father when I learned of these diagnoses. Of course, I always knew that Ethan was anxious – he would vomit on the way to new things, like soccer camp, and I knew that he was uncomfortable in unfamiliar social settings – everyone in our family is socially awkward. But, as a father, I am haunted by the depths Ethan suffered and that he was alone in that suffering. Nevertheless, my point is simple: Ethan's body may have been 18, but developmentally and mentally, he was not.

To the court,

I got the call on March 3rd, while at a doctor's appointment for my mother. The man said he was a public defender assigned to represent my youngest son Ethan who was charged with a federal crime and now in federal custody. I thought it was a scam, like the Nigerian Prince or something, and he was going to tell me where to send the money if I wanted to get my son out of jail. Once he provided enough information specifically about my son, I came to the realization that this wasn't a scam, however I continued to ask myself, how could this be?

My baby boy Ethan was just 18, in his first year of college. He had just graduated Summa Cum Laude from high school last year. He is a rule follower and I've never known him to disrespect or hurt anyone. In high school he took almost nothing but AP classes and got straight A's. Likewise, his first completed semester of college was also straight A's. While incredibly smart, he never takes himself too seriously and enjoys being goofy just to make other people laugh and relax, especially in stressful times. He starts to cry when he sees others crying, even in movies when he knows it's not "real". Unlike his older brothers, he freely offers me hugs or tries to make me laugh when he knows I'm sad or upset. He volunteers to make dinner or watch his younger sister when I'm tired or need to take care of my elderly mother. There just had to be some mistake or misunderstanding.

The public defender tells me Ethan is very upset and that the FBI who took him into custody were afraid he may attempt to hurt himself. I need to get to him and hug him and tell him how much I love him. I need to make him understand that I love him regardless of what he has been accused of, guilty or not, I will always love him.

At the courthouse my husband and I meet with the public defender to learn more about what is and has transpired with our son that morning. He tells us about the charges and how the arrest transpired. He can't give us any details about the "evidence" at the time, and even if he did, I probably would not have heard him. All I could think of is how much Ethan must need a hug.

Ethan is our youngest of three boys and was therefore always trying to keep up with his two older brothers whether physically, developmentally or intellectually able. When we adopted our daughter, he quickly became her favorite brother and best friend. He was eager to support and protect her. He has always been the "pleaser" of the three boys, sacrificing his own preferences of TV shows, board games, and family vacations to those chosen by his brothers or his sister. While the other boys had a "rebellious" stage in their teen years, Ethan never did. He has always been sweet and eager to please his dad, me and his siblings. He does not like to upset or disappoint others in any way. Even at the young age of 18, Ethan realized and has accepted the responsibility that one day, hopefully very far in the future, after his Dad and I are no longer able, he will be the one to take on the role of guardian for our daughter, as she will likely never be able to live independently due to her intellectual disability.

I've learned some things about my son since that morning. I've learned that he has questioned his sexual orientation for several years. I'm not sure if Ethan knows his sexual orientation yet, because he has never had any actual physical sexual encounters with anyone, male or female. I believe he was attempting to define that part of himself once he turned 18 and started college. I've never asked him outright about his sexual orientation, because it wouldn't change my love for him.

I ask that the court allow my son to have the opportunity to recover his life, to the extent possible, as soon as possible, by imposing the minimum sentence with a downward variance from the sentencing guidelines.  I also ask for minimum amount of time of supervised release following incarceration.  I implore you to acknowledge the young man before you, while being academically smart, has made some very poor life decisions, as we all have, but NEVER has any of his actions or decisions been with the intent to harm anyone of any age.

Ethan has cooperated and been respectful with all individuals involved in this nightmare from it's inception.  He has expressed both responsibility and remorse for his actions.  He has commented to me that he respects the involvement of the FBI because he knows they were only involved to protect children and while he had no intention or desire to hurt anyone, especially children, he supports anyone who protects children.  Ethan has discussed his plan to make the best use of his incarceration time by seeking out educational and vocational program opportunities as well as opportunities to work with professional therapists to help him deal with his current social and emotional diagnosis as well as develop a healthy understanding of who he is in all areas of his life and to develop a plan for becoming a productive, responsible, respected member of society after incarceration.

In conclusion, I respectfully request that you consider Ethan as a unique individual with human failings and that the court, as charged by Congress, impose a sentence that is sufficient, but no greater than necessary by applying a variance significantly below the guideline range.

Sincerely,

Kim K. Grzywacz